

Elizabeth A. McKanna, OSB No. 89306
E-mail: lmckanna@mbjlaw.com
MCKANNA BISHOP JOFFE & ARMS LLP
1635 NW Johnson St.
Portland OR 97209
Telephone: (503) 226-6111
Facsimile: (503) 226-6121

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**FARAH IBRAHIM,**

Plaintiff,

v.

**THE STATE OF OREGON,** by and through
**THE OREGON STATE BOARD OF
HIGHER EDUCATION** by and through
**OREGON STATE UNIVERSITY,**

Defendant.

Civil No.

CV 09 - -86

**COMPLAINT**

Unlawful Discrimination on the Basis of
Gender, Race, National Origin and
Religion; Retaliatory Harassment;
Retaliatory Discharge; and
Breach of Contract

**DEMAND FOR A JURY TRIAL**

### INTRODUCTION

1.      This is an action for declaratory, injunctive and monetary relief, including

lost income, compensatory damages and attorneys fees and costs, to redress the deprivation of

rights secured by Title VII, 42 U.S.C. §2000e and under Oregon common law for breach of

contract.

### JURISDICTION

2.      Jurisdiction is conferred upon this court by 28 U.S.C. §1331, federal question

jurisdiction, 28 U.S.C. §1343, civil rights jurisdiction and 28 U.S.C. §1332, diversity.

3.      The court also has supplemental jurisdiction over plaintiff's common law claim

under 28 U.S.C. §1367.

///

Page 1 -      **COMPLAINT**

**ORIGINAL**

24916

4.     Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claims arose in this judicial district.

## ADMINISTRATIVE PREREQUISITES

5.     Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI") on or about November 27, 2006, alleging discrimination based on race, national origin, gender, and religious discrimination, as well as retaliation for opposing and challenging such conduct.  The same complaint was filed with the Equal Employment Opportunity Commission on or about November 30, 2006.  On behalf of plaintiff, her counsel received a Notice of Right to Sue from the EEOC with respect to the complaint on October 22, 2008, allowing her to file within 90 days of receipt.  (Exhibit A attached).  Thus, the jurisdictional requirements for pursuit of her claims herein, under 42 USC § 2000e (Title VII), have been met and this complaint is timely.

6.     Plaintiff also timely provided defendant with notice of said claims dated September 6, 2006, in compliance ORS 30.275.

## PARTIES

7.     Plaintiff, Farah Ibrahim (hereinafter "plaintiff"), is currently a resident of the state of Colorado, County of Broomfield.  At all material times, plaintiff was an employee of defendant Oregon State University at the main campus in Corvallis, Oregon.

8.     Defendant Oregon State University is, and at all material times was, an institution of higher education, administered by The Oregon State Board of Higher Education, an agency of the State of Oregon within the state of Oregon in the County of Benton (hereinafter referred to as  "defendant" or "OSU).

## GENERAL ALLEGATIONS

9.     Defendant OSU and plaintiff entered into a valid written employment contract on or about April 15, 2004, signed by defendant and plaintiff, wherein plaintiff was appointed to the

///

position of Chair of the Department of Teacher and Counselor Education in the School of Education. (Exhibit B attached).

10.     At the time of her recruitment, plaintiff was eminently qualified for the position, serving as the Director of Graduate Studies for the School of Education at Howard University in Washington, D.C. She was born in northwest Pakistan, had received a Master's degree from University of Peshawar, a Master's degree from Edinboro University and a doctorate degree from Penn State. She had a national and an international reputation in the fields of education and counseling, especially in cross-cultural counseling.

11.     The duties of a Department Chair or Head at USO regularly include administering the personnel, financial and physical resources of the department and serving as the lead person in coordinating faculty recruitment and budget and operational planning.

12.     During the interviewing and discussion prior to plaintiff being offered and her accepting the position of Department Chair, plaintiff was not informed that she would be given no budget authority, no supervisory authority over several employees in her Department, inadequate staff to carry out the projects assigned to her as Department Chair and otherwise treated in a manner inconsistent with that regularly afforded a department chair of a University.

13.     Plaintiff relied upon the offer of becoming Department Chair as a genuine offer to be given authority and responsibilities equal to others who held the position of Department Chair at OSU and in other colleges and universities. Had she been informed of the diminutive role and demeaning treatment to which she would be subjected she would never have resigned her substantially higher paying position at Howard University for the OSU position. Nor would she have agreed to sell her home near Howard University, particularly not at the loss she was required to bear.

14.     As Department Chair for the years 2004-05 and 2005-06, plaintiff satisfactorily performed her duties to the full extent she was given the resources and authority to do so.

///

15.    At the same time defendant's agents and, in particular, Dean Sam Stern and the Associate Deans, interfered with and otherwise made it difficult for plaintiff to perform her duties on a regular basis.

16.    Based on the NCATE accreditation review of the College of Education in 1990, defendant was found to be seriously lacking in diversity among its faculty and administrators. Though plaintiff's credentials far surpassed any other faculty member or administrator in the College, Dean Stern displayed the attitude that he was forced to hire plaintiff and, from the beginning, he undermined her ability to succeed. After she was hired but even prior to her arrival in Oregon, classified employees were told that the College had to hire her and that she would be useless (implying similar to other minorities), so they would have to do all of the work for the department.

17.    Dean Stern never at any time discussed any issues with plaintiff regarding her schedule and office hours. Nevertheless, classified staff engaged in conduct indicative of having been asked to spy on plaintiff and to keep track of her whereabouts by Dean Stern and/or Associate Dean Alan Brazier.

18.    Plaintiff was also treated disparately in terms of her compensation when compared to white male employees. Although she did not know it at the time, eight months after she was hired, a white male with less experience, was hired as a department chair at the College and was offered $13,000 more than plaintiff was being paid. Plaintiff was responsible for doctoral level faculty that are tenured, on tenure track or permanent instructors, while the white male primarily had extension "faculty" who do not provide any graduate level instruction to their students. Only one other male in the College who served as a department chair, a Japanese-American, was hired at the same lower rate paid to plaintiff. He came from an administrative position in academia rather than a tenured faculty position.

19.    Numerous other differences in plaintiff's treatment as a department chair in comparison to male department chairs also occurred over her tenure. The more highly paid

white male was given a budget and allowed to exercise full control over it. The Japanese-American male was only required to supervise two faculty members and a seasoned staff person and also enjoyed more autonomy than plaintiff.

20.      In comparison, plaintiff was given no budget for her department and no budgetary authority. The support staff hired for plaintiff were completely inexperienced with university work and very underpaid in light of the extremely high level of work required. This combination created extreme dissatisfaction, but plaintiff was given no authority or control over these aspects of hiring of her own support staff.

21.      Dean Stern also undermined plaintiff's ability to run the department in other ways, such as not involving her in important decision-making responsibilities related to the department. These decisions included job interviews and selection of employees who would be integrally involved with the TCE department. In addition, white males, such as the "special advisor to the dean" were placed in her department even though they were not assigned to report to her. A white female employee, who was assigned as an instructor in teacher education even though her whole career history was in administration, was also assigned to plaintiff's department and sat in on all plaintiff's department meetings. This teacher was not required to report to plaintiff but instead assigned to Associate Dean Brazier. Having individuals in her department who did not report to plaintiff was disruptive and made it difficult to form a cohesive department. Plaintiff brought these and other concerns to the attention of Dean Stern and, although to her face he appeared to agree these were serious problems, he took no action to change the situation. Instead he let the problems continue and fester.

22.      In December, 2005, Dean Stern downgraded plaintiff on a review in several areas such as being an administrator, even though he had refused to give her budgetary authority and other means of control which would have allowed her to provide more leadership within her department. In addition, though plaintiff completed every task she was given within the first year, which included a long list, she was given virtually no credit or recognition for her

efforts in the review or otherwise. She accomplished all of this with reduced support staff, one program associate and student workers. The department's only support person and the student workers also reported to a professional faculty person who did not report to plaintiff and who would countermand plaintiff's directives.

23. Plaintiff also was asked to take on several tasks which were not acknowledged as part of her annual report. These tasks included assisting in developing and coordinating two master's degree programs in counseling and the Double Degree program at OSU-Cascades. Plaintiff received no additional compensation for this work, but found out in the Spring of 2006, that OSU-Cascades, a white female, was charged and paid $10,000 for her work. She also learned that another chair, a white male, was paid $10,000 for work on only one undergraduate program for OSU-Cascades.

24. Plaintiff believes situations were set up to cause her to fail. For example, she worked very hard on two grant proposals related to cultural competence. Her role was central to the grants. Then, in the Spring of 2006, the College pulled back at the last minute and chose not to support them.

25. Plaintiff also was asked to set up a dual-major program involving early childhood development. It would have brought in approximately 400 undergraduate students. Again, in the Spring of 2006, this was stopped at the last minute by Dean Stern. Many students were left wondering what happened and were, undoubtedly, very disappointed.

26. Dean Stern was also concerned with what he perceived to be plaintiff's religious beliefs and prejudices. Plaintiff had a photograph of the Dalai Lama in her office and also a small Buddha statue. While plaintiff never spoke of her religious beliefs, Dean Stern expressed concern about hiring a woman because she was a Christian fundamentalist. He asked plaintiff if she would have any objection to the woman being hired in light of the faith of the new recruit who happened to be a "family friend" of Dean Stern. He also pointed out to plaintiff that another staff person was a Wiccan and asked plaintiff if it would bother her to have a Wiccan

reporting to her.  Although plaintiff assured him that she would follow the law and an employee's religion would not be considered in any of her decisions, this staff person, who was directly responsible for tasks affiliated with the TCE department, was assigned to report to the non-academic Associate Dean (a white male), rather than plaintiff.  This decision was totally illogical and counterproductive since plaintiff was trying to develop a departmental structure and really needed to have staff unity and the support her position provided.

27.    At the beginning of the 2005-06 academic year, a very difficult situation arose involving a faculty member who was assigned to teach graduate courses when, at the same time, she was a doctoral student at the University of Oregon.  Having a doctoral student teach graduate courses was not permitted by the OSU regulations.  Additionally, she did not have any classroom teaching experience, which is expected by the Teacher Standards and Practices Commission and, in fact, had been let go from a non-licensed position by the Corvallis Public Schools.  Plaintiff objected to this assignment decision which violated regulations and risked acceptance of the courses for their accreditation by the accrediting agency.  Instead of receiving support, she was criticized and then had to bear numerous adverse reactions.  Dean Stern told plaintiff repeatedly that the "community" was distressed about this situation but when she asked Dean Stern what community he was talking about, he would not explain.  Plaintiff believed Dean Stern knew this faculty member through a religious affiliation.  Plaintiff believes that her raising this concern was the trigger for moving her out of her position and making her employment so intolerable she would be required to resign.

28.    Plaintiff filed a complaint in February, 2006, with the Associate Provost for academic affairs with the help and support of the leaders of the Association of Faculty of Color.  It was filed at the informal stage.  The complaint cited the breach of the employment contract based on plaintiff not being allowed to run her department (micro-management by the college leadership), not being provided with a budget, and harassment by Dean Stern and Associate Dean Brazier and their staff.  It also cited unlawful discrimination as the motive for the breach.

Once plaintiff filed the complaint, the hostility increased. Plaintiff did not receive a contract in a timely manner for the following year and the personal interaction with the Dean and Associate Deans was extremely hostile.

29.     When no resolution or remedy was provided in the grievance at the informal stage, in April 2006, plaintiff moved it to the formal stage and allowed the OSU Affirmative Action office to continue the investigation. However, despite promises of a prompt investigation, consistent with the state regulations, no decision had been reached or report issued by June, over 4 months later. Plaintiff could not continue without a contract for the following year, and what was clearly on-going and mounting hostility from the Deans and their assistants. Thus, on June 6, 2006, plaintiff found the situation to be intolerable and was compelled to submit her resignation. She was constructively discharged.

30.     The investigation of the complaint was not completed and communicated to plaintiff, again in violation of the regulations, until September 6, 2006. By that time, plaintiff had been compelled to find alternative employment. She had had no intention of moving, since her son and new grandchild lived close by in Oregon. However, the only employment available was in Colorado, and she had had no choice except to sell her house, once again, and relocate to Colorado.

31.     Plaintiff has suffered loss of income, moving expenses related to relocation for her new a position, substantial increase in living costs due to her efforts to mitigate the damages, and other financial injuries related to having to sell her home within such a short period of time. These losses and expenses are all directly related to and caused by defendant's unlawful treatment. She has also experienced substantial emotional distress on an on-going basis during much of her employment, exacerbated during the last several months and the circumstances surrounding her constructive discharge. The emotional distress is on-going, in part, due to this forced separation form her son and grandchild. She has required additional medical treatment for physical symptoms exacerbated by the stress.

## FIRST CLAIM FOR RELIEF

### (Title VII - Discrimination based on Race, National Origin, Gender and Religion)

32.     Plaintiff realleges paragraphs 1 through 31 as though fully set forth herein.

33.     Defendant is an employer within the meaning of 42 U.S.C. §2000e, at all material times employing over 500 employees.

34.     As set forth above, plaintiff was subjected to disparate and inferior treatment on an ongoing basis with respect to many terms, conditions, privileges and aspects of her employment due totally, or in substantial part, to her race (Asian), national origin (born in Pakistan), gender (female) and perceived religion (Eastern Religions), individually or a combination thereof.

35.     Actions taken by the defendant through its managers and administrators were taken while they were acting within the course and scope of their employment acting on behalf of OSU.  Their conduct is therefore attributed to and considered to be an act by defendant OSU for purposes of this lawsuit.

36.     Defendant's conduct constituted discrimination based on race, national origin, gender and/or religion, all prohibited by Title VII, 42 USC §2000e-2(a)(1).

37.     As a direct and proximate result of defendant OSU's conduct, plaintiff was caused to forfeit a substantially higher salary and then denied an equitable salary for the Department Chair position.  She has also suffered loss of income and benefits as a result of her discharge and is likely to suffer further losses in the future, all in amounts to be determined at trial.  Further, plaintiff has and will continue to incur substantial costs related to her securing alternative employment and for medical expenses, all to her economic detriment.  Plaintiff will seek leave to amend the Complaint with these amounts at a time closer to trial.

38.     As a direct result of defendant's actions, plaintiff has been subjected to physical symptoms related to pain and suffering, substantial emotional distress, embarrassment, humiliation, impaired ability to enjoy life, injury to her personal and professional reputation, and

plaintiff has been generally damaged. Plaintiff is entitled to an award of compensatory damages under 42 USC §1981a in the amount of $300,000.

39. Further, plaintiff has incurred costs and attorney fees which she is entitled to recover under 42 U.S.C. §2000e-5.

40. Plaintiff seeks all equitable and legal relief to which she is deemed entitled, including a declaratory, injunctive, economic and non-economic remedies supported by the facts and the law.

## SECOND CLAIM FOR RELIEF

### (Title VII - Hostile Environment)

41. Plaintiff realleges paragraphs 1 through 31 as though fully set forth herein.

42. Defendant is an employer within the meaning of 42 U.S.C. §2000e, at all material times employing over 500 employees.

43. Plaintiff has been subjected to a hostile work environment based on her race (Asian), national origin (born in Pakistan), gender (female) and perceived religion (Eastern Religions), individually or a combination thereof. Such conduct was unwelcome.

44. The conduct described herein was sufficiently severe and/or pervasive to alter the conditions of employment and create an abusive working environment.

45. Defendant knew or should have known of the conduct by administrative management and non-management employees which created this discriminatory hostile work environment.

46. Defendant OSU failed to take reasonable steps to prevent the discriminatory hostile environment after the conduct and the propensity for further abusive behavior had been made known to various managers, including those persons in Affirmative Action/Equal Employment Opportunity Office and in Human Resources who had a duty to intervene.

47. Defendant OSU failed to take reasonable steps to correct promptly the discriminatory treatment after it was brought to the administration's attention by plaintiff.

48.     Defendant OSU failed to exercise reasonable care to inform plaintiff what corrective action it intended to take in order to stop the harassment, to correct its effects on plaintiff, and to ensure that harassment did not recur at any time in the future.

49.     Actions by the defendant through its managers and administrators were taken while they were acting within the course and scope of their employment acting on behalf of OSU. Their conduct is therefore attributed to and considered to be an act by defendant OSU for purposes of this lawsuit.

50.     The facts set forth above constitute discrimination in the form of a hostile environment based on race, national origin, gender and religion, or any combination thereof, all prohibited by Title VII, 42 USC §2000e-2(a)(1).

51.     As a direct and proximate result of defendant OSU's conduct, plaintiff was caused to forfeit a substantially higher salary and then denied an equitable salary for the Department Chair position. She has also suffered loss of income and benefits as a result of her discharge and is likely to suffer further losses in the future, all in amounts to be determined at trial. Further, plaintiff has and will continue to incur substantial costs related to her securing alternative employment and for medical expenses, all to her economic detriment. Plaintiff will seek leave to amend the Complaint with these amounts at a time closer to trial.

52.     As a direct result of defendant's actions, plaintiff has been subjected to physical symptoms related to pain and suffering, substantial emotional distress, embarrassment, humiliation, impaired ability to enjoy life, injury to her personal and professional reputation, and plaintiff has been generally damaged. Plaintiff is entitled to an award of compensatory damages under 42 USC §1981a in the amount of $300,000.

53.     Further, plaintiff has incurred costs and attorney fees to which she is entitled to recover under 42 U.S.C. §2000e-5.

///

///

54.     Plaintiff seeks all equitable and legal relief to which she is deemed entitled, including a declaratory, injunctive, economic and non-economic remedies supported by the facts and the law.

## THIRD CLAIM FOR RELIEF

### (Title VII - Retaliatory Treatment)

55.     Plaintiff realleges paragraphs 1 through 31, as though fully set forth herein.

56.     Defendant is an employer within the meaning of 42 U.S.C. §2000e, at all material times employing over 500 employees.

57.     As set forth above, plaintiff has been subjected to discrimination based on her race, national origin, gender and perceived religion, individually or a combination thereof. Plaintiff objected to and opposed such treatment by various actions including but not limited to:

        a.     Communicating the merits or lack thereof related to various adverse actions to administrators;

        b.     Filing an informal complaint of discrimination within defendant's established procedures;

        c.     Filing a formal complaint of discrimination within defendant's established procedures;

        d.     Retaining private counsel to assist her in bringing the conduct which she believed was unlawful to the attention of defendant.

58.     Plaintiff's objection to and challenge of conduct, which she in good faith believed to be in violation of Title VII, constituted protected activity under the law.

59.     Defendant's response, by and through its agents, was adverse and of the type that could well dissuade a reasonable employee from raising a concern of discrimination and, therefore, constituted retaliation prohibited under 42 U.S.C. § 2000e-3(a).

60.     Defendant's materially adverse actions were taken by its managers and administrators while they were acting within the course and scope of their employment acting

on behalf of OSU. Their conduct is therefore attributed to and considered to be an act by defendant OSU for purposes of this lawsuit.

61.     Defendant's conduct constituted retaliation which is prohibited by Title VII, 42 USC §2000e-3(a).

62.     As a direct and proximate result of defendant OSU's conduct, plaintiff has suffered loss of income and benefits as a consequence of her discharge and is likely to suffer further losses in the future in an amount to be determined at trial. She also has and continues to incur substantial costs in securing alternative employment and medical expenses, all to her economic detriment. Plaintiff will seek leave to amend the Complaint with these amounts at a time closer to trial.

63.     As a direct result of defendant's actions, plaintiff has been subjected to physical symptoms related to pain and suffering, substantial emotional distress, embarrassment, humiliation, impaired ability to enjoy life, injury to her personal and professional reputation, and plaintiff has been generally damaged. Plaintiff is entitled to an award of compensatory damages under 42 USC §1981a in the amount of $300,000.

64.     Further, plaintiff has incurred costs and attorney fees which she is entitled to recover under 42 U.S.C. §2000e-5.

65.     Plaintiff seeks all equitable and legal relief to which she is deemed entitled, including a declaratory, injunctive, economic and non-economic remedies supported by the facts and the law.

## FOURTH CLAIM FOR RELIEF

### (Title VII - Retaliatory Discharge)

66.     Plaintiff realleges paragraphs 1 through 31, as though fully set forth herein.

67.     Defendant is an employer within the meaning of 42 U.S.C. §2000e, at all material times employing over 500 employees.

///

68.     As set forth above, plaintiff has been subjected to discrimination based on her race, national origin, gender and perceived religion, individually or a combination thereof. Plaintiff objected to and opposed such treatment by various actions including but not limited to:

a.     Communicating the merits or lack thereof related to various adverse actions to administrators;

b.     Filing an informal complaint of discrimination within defendant's established procedures;

c.     Filing a formal complaint of discrimination within defendant's established procedures;

d.     Retaining private counsel to assist her in bringing the conduct which she believed was unlawful to the attention of defendant.

69.     Plaintiff's objection to and challenge of conduct, which she in good faith believed to be in violation of Title VII, constituted protected activity under the law.

70.     Defendant's response, by and through its agents, was so adverse as to create an intolerable work environment for any reasonable employee, including plaintiff, for the future. Plaintiff therefore was compelled to leave her position, that is, she was constructively discharged. This discharge constituted retaliation prohibited under 42 U.S.C. § 2000e-3(a).

71.     Actions by the defendant through its managers and administrators were taken while they were acting within the course and scope of their employment acting on behalf of OSU. Their conduct is therefore attributed to and considered to be an act by defendant OSU for purposes of this lawsuit.

72.     Defendant's conduct constituted retaliation which is prohibited by Title VII, 42 USC §2000e-3(a).

73.     As a direct and proximate result of defendant OSU's conduct, plaintiff has suffered loss of income and benefits as a consequence of her discharge and is likely to suffer further losses in the future. Further, she has and continues to incur substantial costs related to

her securing alternative employment and medical expenses, all to her economic detriment. Plaintiff will seek leave to amend the Complaint with these amounts at a time closer to trial.

74.     As a direct result of defendant's actions, plaintiff has been subjected to  physical symptoms related to pain and suffering, substantial emotional distress, embarrassment, humiliation, impaired ability to enjoy life, injury to her personal and professional reputation, and plaintiff has been generally damaged.  Plaintiff is entitled to an award of compensatory damages under 42 USC §1981a in the amount of $300,000.

75.     Further, plaintiff has incurred costs and attorney fees which she is entitled to recover under 42 U.S.C. §2000e-5.

76.     Plaintiff seeks all equitable and legal relief to which she is deemed entitled, including a declaratory, injunctive,  economic and non-economic remedies supported by the facts and the law.

### FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

77.     Plaintiff restates and realleges paragraphs 1 through 31.

78.     Defendant OSU and plaintiff entered into a valid written employment contract on or about April 15, 2004, signed by defendant and plaintiff, wherein plaintiff was offered the position of Chair of the Department of Teacher and Counselor Education in the School of Education.  (Exhibit B, attached).

79.     The duties of a Department Chair or Head at OSU regularly include administering the personnel, financial and physical resources of the department and serving as the lead person in coordinating, faculty recruitment and budget and operational planning.

80.     At the time of her recruitment, plaintiff was serving as the Director of Graduate Studies for the School of Education at Howard University in Washington, D.C.  She owned her home and earned a greater salary than OSU was offering.  Based on the interviewing and discussion prior to plaintiff being offered and her accepting the position of Department Chair,

plaintiff was not informed that she would be given no budget authority, no supervisory authority over several employees in her Department, inadequate staff to carry out the projects assigned to her Department and otherwise treated in a manner inconsistent with that regularly afforded a department chair of a University.

81.     Plaintiff relied upon the offer of becoming Department Chair as a genuine offer to be given authority and responsibilities equal to others who held the position of Department Chair at OSU and in other colleges and universities. Had she been informed of the diminutive roll and demeaning treatment to which she would be subjected she would never have resigned her position at Howard University for the OSU position or agreed to sell her house at a loss..

82.     Plaintiff fully and satisfactorily performed her duties to the full extent she was given the resources and authority for the years 2004-05 and 2005-06.

83.     At the same time defendant and, in particular, Dean Stern and the Associate Deans, interfered with and otherwise made it difficult for plaintiff to perform her duties by failing to provide her with control of her budget as set forth herein.

84.     Through the conduct of OSU's administrators and managers, defendant breached the contract with plaintiff and said breach was material.

85.     Plaintiff is entitled to be made whole for the injuries caused by this breach.

86.     As a direct and proximate result of defendant OSU's conduct, plaintiff has suffered loss of income and benefits as a consequence of her relying upon the offer of serving as Department Chair and forgoing her substantially higher income at Howard. In addition, plaintiff was required to sell her home quickly and, upon information and belief, at a loss of its full value at the time of the sale. Further, plaintiff has and will continue to incur substantial costs in acquiring alternative employment, once again having to sell her home in Oregon at a lower than market price. Finally, plaintiff has incurred medical expenses as a result of the physical and emotional injuries resulting from the breach. Plaintiff will seek leave to amend the Complaint with this amount at a time closer to trial.

87.     Further, plaintiff has incurred costs and attorney fees which she is entitled to recover as a prevailing party.

88.     Plaintiff seeks all equitable and legal relief to which she is deemed entitled, including a declaratory, injunctive,  economic and non-economic remedies supported by the facts and the law.

### DEMAND FOR JURY TRIAL

89.     Plaintiff demands a trial by jury on each claim for relief.

WHEREFORE, the Court should grant judgment in favor of plaintiff and against defendant and grant the following relief:

(1)     A finding that defendant OSU's actions constituted discrimination based on her gender, race, national origin and/or religion in violation of Title VII, 42 USC § 2000e-2(a);

(2)     A finding that defendant OSU's actions constituted retaliation for her opposition to and challenging of discriminatory treatment  based on her gender, race, national origin and/or religion in violation of Title VII, 42 USC § 2000e-3(a);

(3)     A finding that defendant OSU's action constituted a breach of contract under Oregon common law;

(4)     An order enjoining defendant OSU from engaging in any further unlawful behavior such as that described in paragraphs (1) and (2) and (3) in this prayer:

(5)     An order requiring defendant OSU to publish statements of apology to plaintiff for its wrongdoing and recognizing her contributions to the College, as well as any other comparable ameliorative relief deemed appropriate;

(6)     An order requiring defendant OSU's administrative personnel, as well as all other employees, to obtain training regarding gender, cultural and religious awareness and sensitivity from a qualified external agency at least annually and to report such compliance to the court;

(7)     An order enjoining defendant OSU's from discriminating against plaintiff and subjecting her to retaliation based on her reporting violations of  Title VII;

(8)     An award compensating plaintiff for her past and future monetary losses, including any back pay, out-of-pocket expenses, any loss of past and future earning capacity, any loss of past and future benefits of employment, and any medical and health care expenses caused by defendant;

(9)     An award of compensatory damages of $300,000 against defendant OSU for each claim to the full extent permitted under law, compensating plaintiff for her physical and emotional pain and suffering, mental anguish, humiliation, embarrassment, injury to personal and professional reputation and loss of enjoyment of life;

(10)     An order directing defendant to pay plaintiff's costs, reasonable attorney fees, and expert witness fees pursuant to 42 USC §2000e-5;

(11)     An award of pre-judgment and post-judgment interest on all amounts due to plaintiff as a result of this actions; and

(12)     Such further or alternative relief in favor of plaintiff as the Court deems appropriate.

DATED this ___20th___ day of January, 2009.

MCKANNA BISHOP JOFFE & ARMS LLP

_Elizabeth McKanna_

Elizabeth A. McKanna, OSB No. 89306
Telephone: (503) 226-6111
Of Attorneys for Plaintiff



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5048 6143

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

October 16, 2008

McKanna Bishop Joffe Arms

OCT 22 2008

Ms. Farah Ibrahim
c/o Elizabeth A. McKanna, Esquire
Law Offices of McKanna, Bishop, et al.
Attorney at Law
1635 N.W. Johnson Street
Portland, OR 97209

Re: EEOC Charge Against Oregon State University, Office of the President
    No. 551200700592

Dear Ms. Ibrahim:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC
Seattle District Office, Seattle, WA.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Grace Chung Becker
Acting Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Seattle District Office, EEOC
    Oregon State University, Office of the President

**EXHIBIT A**
**Page 1 of 1**

March 22, 2004

Dr. Farah Ibrahim
5155 Flower-Tuft Court
Columbia MD 21044

Dear Farah:

I am pleased to offer you the position of Chair of the Department of Teacher and Counselor Education in the *new* School of Education at Oregon State University.

As Chair of the Department of Teacher and Counselor Education, your annual salary rate will be $87,504 for full-time, 12-month service. In addition, you will be eligible for regular salary adjustments, both standard and discretionary. This initial appointment will be from June 1, 2004 through June 30, 2005; the appointment includes tenure on a 12-month basis as Professor of Counseling at 1.0 FTE in the Department of Teacher and Counselor Education.

This appointment is subject to the provisions of the Oregon Administrative Rules of the State Board of Higher Education as well as any applicable Oregon State University rules and policies, which are incorporated by this reference.

Should you no longer hold the responsibilities of Chair, your salary in the tenured position will remain the same at $87,504, adjusted proportionally for any regular salary adjustments that occurred during your appointment as Chair.

While department chairs serve at the pleasure of the dean, the basic period of service is anticipated to be two years and may be renewed. As with all OSU administrators, administrative performance is a regular part of all periodic reviews (following the schedule described in the Faculty Handbook).

In addition to your salary, Oregon State University will reimburse you up to $5,000 for household moving expenses in accordance with University policy. For your assistance, an Oregon University System (OUS) Moving Expense Summary Table is enclosed. For additional information on the OUS Moving/Reimbursement policy, visit http://www.ous.edu/cont-div/fasom/sec10/10030602.htm. If you have questions about either one of these reimbursement procedures, please contact the School of Education Accountant Otila Zuschlag at 541-737-3738 or otila.zuschlag@oregonstate.edu.

Oregon State University offers a variety of insurance, retirement, and other benefit plans. The Office of Human Resources (OHR) will forward a benefit option package in care of your department for your review. Medical, dental, and life/disability insurance forms must be completed and submitted to the Employee Benefits section of OHR within 60 days of your date of employment



OREGON
STATE
UNIVERSITY

210 Education Hall
Corvallis, Oregon
97331-3502

Telephone
541-737-4661

Fax
541-737-2040

http://oregonstate.edu/education



OREGON
STATE
UNIVERSITY

210 Education Hall
Corvallis, Oregon
97331-3502

in order for you to receive coverage. Your coverage is effective the first day of the calendar month following your date of employment and your submission of the enrollment application. Please call the OSU Benefit Office at 541-737-2805 if you have questions.

Please note that you will need to make available to department personnel your original Social Security card in order to complete university employment documents when you begin your position. Further information about this may be found at http://oregonstate.edu/admin/hr/newempl.html.

Oregon State University has a technology transfer program. When you arrive you will be required to sign an agreement concerning the rights to technology developed during your employment at OSU. If you would like additional information including faculty rights to a royalty share, contact the Office of Technology Transfer, Kerr Administration Building A312, 541-737-3439.

OSU has developed a unique new employee orientation web site, Inside OSU, at http://osu.orst.edu/admin/hr/dev/orient/. We encourage you to visit the site to find links to both campus and community information. You will find checklists, maps, benefits information, orientation dates, and practical recommendations to help you in your successful transition to OSU.

If you find this offer to be acceptable, please sing one copy of this letter and return it to me. We are looking forward with enthusiasm to having you join us.

Sincerely,

Sam Stern
Professor and Dean

I accept this offer as outlined in this letter.

Farah A. Ibrahim                                    April 15, '04
                                                     Date

C:    Vice Provost for Academic Affairs
      Office of Human Resources

Telephone
541-737-4661

Fax
541-737-2040

http://oregonstate.edu/education